# IN THE COURT OF APPEALS OF IOWA

No. 22-0612
Filed March 29, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KENJI TALIBE MEEKS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee (South) County, Mark Kruse,

Judge.

A defendant appeals his burglary and theft convictions. **AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

In this cautionary tale of online dating, Kenji Meeks—a lothario who "knew how to say the right thing"—convinced a woman he had just met on a dating app to let him move in with her. The end of their short-lived romance led to his convictions as a habitual offender for third-degree burglary and first-degree theft.[1] Meeks appeals, claiming the State failed to produce sufficient evidence on the intent element for both convictions. We affirm.

## I. Background Facts and Proceedings

Meeks met nineteen-year-old Madison on a dating app in early September 2021. The same day that they started chatting on the app, Madison drove to Illinois where Meeks was staying with a friend, picked him up, and brought him back to the home she shared with her mother in Iowa. Madison had the weekend off from work and planned to drive Meeks back home at some point, but he just "ended up staying."

Meeks told Madison and her mother that he had a bad relationship with his family. So they tried to help Meeks by giving him a place to live, driving him to job interviews, and letting him use their address on applications. But Madison's mother soon started seeing "red flags." One of those red flags came on a trip to the mall with Meeks when Madison opened two credit card accounts in her name and used one to purchase new clothes for Meeks's son.

Another came about a week after Meeks started living with Madison. Meeks persuaded her to buy two phones on contract, a Galaxy Z Fold for Meeks and a

---

[1] Meeks was also convicted of domestic abuse assault causing bodily injury and first-degree harassment, but he does not challenge those convictions on appeal.

Galaxy Z Flip for Madison. Even though Madison already had an iPhone, she felt like she couldn't say no to Meeks. Because Madison had the better credit score, both phones were put under her name. Meeks traded in his own iPhone to pay the initial deposit on the new phones, and he agreed to pay the monthly bill for the Galaxy phones. But he never paid the bill. Madison rarely used the Galaxy Z Flip phone, which she kept in her car, instead preferring the iPhone she already had.

Madison's relationship with Meeks quickly went downhill. One day, Meeks called Madison with a cell phone representative on the other line to add an iPhone to her account. She hung up because she was at work. On another occasion, Meeks asked Madison if he could have the Galaxy Z Flip phone, and she said no. He then told Madison that he would put her dog's kennel in her car at work. Madison gave Meeks her car keys, but rather than putting the kennel in the car, he took the flip phone out of her car. Soon after, Madison's mother told her that she did not want Meeks in the house anymore, so he moved out. Madison asked for the Galaxy phones back, but Meeks refused.

While all this was going on, Meeks started a relationship with a different woman named Rikki. After Meeks left Madison's house, he came back a few times with Rikki to get some things that he had left there. And he still sometimes spent the night with Madison, as he did on September 23, 2021, after a fight with Rikki.

Early that morning, around 2:00 or 3:00 a.m., Meeks called Madison and asked to be let into the house because he didn't have a key. She let him in and then went back to sleep. Before 9:30 a.m., as she was getting ready for work, Madison heard someone on the front porch. She opened the door and saw a bunch of bags. Rikki was coming up the steps "with more stuff, and she said, you

need to watch out for [Meeks], I'm scared for my life, he's been threatening me." Madison went upstairs to her bedroom where Meeks was to "tell him that his friend had dropped all his stuff off," and he said, "yeah, because she's a miserable bitch."

On her way to work, Madison became uncomfortable with the idea of leaving Meeks alone in the house. So she went back to tell him to leave. Meeks refused. Madison threatened to call the police, but he took her iPhone out of her hands and said, "you're not calling shit." Madison tried to get the phone back, but Meeks pushed her and eventually ran out of the house with the phone.

Madison went to her mother's work, "very distraught, crying, screaming, throwing up." The two went back to the house and called the police. An officer came to speak with them and then asked Madison to go to the station to give a statement. Before they went to the station, Madison's mother put everything that Rikki had dropped off for Meeks in the living room and locked the door. While the officer was waiting for Madison at the station, he called Meeks, who admitted that he had "snatched" Madison's iPhone from her. But he told the officer that he left the phone on the back porch. Even though Madison's home does not have a back porch, the officer asked Madison's mother to go look for the phone while Madison gave her statement. It was nowhere to be found.

While Madison and her mother were gone, neighbors called the police to report seeing a person who looked like Meeks push in the air conditioning unit at Madison's home and climb in the window. One of the neighbors then saw Meeks "come running around the side of the house." A car with Illinois license plates was waiting for him. Meeks threw some clothes and shoes into the car, which drove off without him. By the time officers got to the house, there was no sign of Meeks.

The front door was wide open, and his things inside were gone, aside from a couple of shoes on the ground. Later, Madison noticed her AirPods and a red JBL speaker that had been on her bedroom nightstand that morning were missing.

That afternoon, Madison heard from some family members who were worried her phone had been hacked. They had received some text messages from her asking for money. And they saw that some nude photos of Madison had been posted on her social media accounts. The photos were only accessible on Madison's missing iPhone. She believed that Meeks posted the photos to get back at her because she had the cell phone company turn off the Galaxy phones.

As a result of these events, Meeks was charged with burglary in the third degree, theft in the first degree, domestic abuse assault causing bodily injury, and harassment in the first degree, with a habitual offender enhancement for the burglary and theft charges. The case proceeded to a jury trial where Meeks represented himself. Although he did not testify in his own defense, he told the jury in his closing argument that he was an "innocent young man," who had been retaliated against by angry women he had scorned. The jury didn't buy it and found him guilty as charged. Meeks appeals.

## II. Standard of Review

Challenges to the sufficiency of the evidence supporting a conviction are reviewed for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 517 (Iowa 2022). We consider "whether, taken in the light most favorable to the State, the finding of guilt is supported by substantial evidence in the record." *State v Meyers*, 799 N.W.2d 132, 138 (Iowa 2011). Substantial evidence exists when the

evidence "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Id.*

## III. Analysis

### A. Burglary

We begin with Meeks's challenge to his third-degree burglary conviction. The jury was instructed the State would have to prove the following to find him guilty of that crime:

> 1. On or about the 23rd day of September, 2021, the defendant did break into or enter a residence. . . .
> 2. The residence was an occupied structure.
> 3. The defendant did not have permission or authority to break into or enter the residence.
> 4. The residence was not open to the public.
> 5. The defendant did so with the specific intent to commit a theft.

Meeks claims the State failed to prove the last element because he only "entered the residence to reclaim his own property," not to steal Madison's. We disagree.

As Meeks points out, direct evidence of specific intent is rare. *See State v. Gay*, No. 19-1354, 2021 WL 4889239, at *2 (Iowa Ct. App. Oct. 20, 2021); *see also State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021). So it is often "shown by circumstantial evidence and the reasonable inferences drawn from that evidence." *Ernst*, 954 N.W.2d at 55 (citation omitted). "The requirement of proof beyond a reasonable doubt is satisfied if it is more likely than not that the inference of intent is true." *State v. Finnel*, 515 N.W.2d 41, 42 (Iowa 1994). The State is "not required to refute every possible inference from the evidence," as Meeks seems to suggest. *Ernst*, 954 N.W.2d at 57.

The record contains substantial evidence that Meeks broke into Madison's home with the specific intent to commit a theft. Meeks did not have a key to the house. So to get inside, he had to push the air conditioning unit out of a window and crawl through. *See Gay*, 2021 WL 4889239, at *2 ("One can reasonably infer an intent to commit theft 'from the evidence of surreptitious entry and other circumstances.'" (quoting *Ernst*, 954 N.W.2d at 55)). He told a neighbor who saw this that he had locked himself out of the house, which was a lie, and needed to get some things. *See State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt."). Another neighbor testified that he saw Meeks running around the side of the house before throwing clothes and shoes into a waiting car. The neighbor said Meeks "was in a hurry." *See Gay*, 2021 WL 4889239, at *2 (finding that the jury could infer an intent to commit theft based on evidence the defendant fled from a garage when a vehicle approached it); *see also Finnel*, 515 N.W.2d at 42 (noting intent may be inferred from a defendant's acts preceding and following an unauthorized entry).

True, Meeks did take his own property from the residence. But he also took some of Madison's. She testified that when she went through the house after the break-in, she noticed that her AirPods and red JBL speaker were missing. Both had been on the nightstand in her bedroom, where Meeks spent the night, when she left for work that morning. The jury could reasonably infer from this evidence that Meeks stole these items while he was in the house, even though the neighbor only saw him leave with clothes and shoes. *See State v. Doiel*, No. 16-1487, 2017 WL 4049493, at *2 (Iowa Ct. App. Sept. 13, 2017) (finding a rational jury could infer

the defendant entered the apartment to steal pills when the pills were missing after the unauthorized entry); *see also State v. Oetken*, 613 N.W.2d 679, 686 (Iowa 2000) (finding that the evidence "overwhelmingly indicated" the defendant "intended to commit theft by breaking into private residences, and stealing firearms, televisions, and other personal property").

Considering all the evidence in the light most favorable to the jury's verdict, including reasonable inferences to be drawn from it, we conclude that Meeks's conviction for third-degree is supported by substantial evidence.

## B. Theft

For the first-degree theft charge, the jury was instructed that the State had to prove the following:

> 1. On or about the 23rd day of September, 2021, the defendant took possession or control of an iPhone 12 Max Pro belonging to Madison. . . .
> 2. The defendant did so with the intent to deprive Madison . . . of the iPhone 12 Max Pro.
> 3. The iPhone 12 Max Pro was taken from the person of Madison. . . .

Meeks again focuses on the intent element, arguing that because he "returned the phone the same day it was taken, he did not take the phone with the intent to deprive."

Had Meeks actually returned Madison's phone, this argument might have some merit. *See State v. Berger*, 438 N.W.2d 29, 31 (Iowa Ct. App. 1989) (holding that intent to deprive "requires more than a temporary dispossessing of another's property"). But Madison's mother did not find the phone at the house when she went to look for it. And Madison testified the phone was never returned to her. The jury was free to believe their testimony over Meeks's claim that he left the

phone on Madison's back porch, especially considering the house did not have a back porch.  *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) ("It is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (citation omitted)); *accord State v. Carruthers*, No. 13-1638, 2014 WL 4630059, *2 (Iowa Ct. App. Sept. 17, 2014) (finding that the jury was free to disbelieve the defendant's "claim that she intended to turn the cell phone in to local police").

The evidence also showed that after Meeks admittedly "snatched" the phone from Madison's hands and left with it, nude photos were posted to her social media accounts.  Madison testified that these photos were only accessible from her phone.  While her phone was password protected, she believed that Meeks knew the password from when they lived together.  The jury credited this testimony in finding Meeks guilty of first-degree harassment for posting the nude photos—a conviction that Meeks has not challenged on appeal.  Madison also testified that when she tried to find her phone using its locator app, the app had been disabled and her Apple password had been changed.  From all this evidence, a reasonable jury could conclude that Meeks intended to permanently deprive Madison of her phone.

## IV.    Conclusion

Because substantial evidence supports Meeks's convictions for third-degree burglary and first-degree theft, we affirm.

**AFFIRMED.**